# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**KEVIN B. GAITHER,**

      **Petitioner,**

**-vs-**                                  **Case No.  8:12-CV-889-T-27TGW**

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

      **Respondent.**

_____/

## ORDER

Petitioner, an inmate of the Florida penal system, initiated this action by filing a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Dkt. 1).  Petitioner challenges his capital sexual battery conviction entered in 2006 by the Twelfth Judicial Circuit Court, Manatee County, Florida.  Respondent filed a response to the petition, in which it incorporates a motion to dismiss the petition as untimely (Dkt. 14).  Petitioner filed an amended reply to the response (Dkt. 21).  Upon consideration, the petition is **DENIED**.

## DISCUSSION

### I. Timeliness

Respondent contends that the petition is time-barred.  Petitioner disagrees, arguing that his petition was timely filed.  Additionally, Petitioner argues for equitable tolling based on the state post-conviction court's delay in dismissing Petitioner's first post-conviction motion.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) establishes a one year statute of limitations for seeking federal habeas corpus relief from a state-court judgment.  28 U.S.C. § 2244(d)(1).  *Lawrence v. Florida*, 549 U.S. 327, 331 (2007).  The limitation period runs from the

latest of . . . "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. . . ." 28 U.S.C. § 2244(d)(1)(A). Additionally, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). An application is "properly filed" when "its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000).

On October 5, 2007, the appellate court affirmed Petitioner's state court conviction (Resp. Ex. 4); *Gaither v. State*, 966 So. 2d 394 (Fla. 2d DCA 2007) [table]. His conviction therefore became final 90 days later, on January 3, 2008, when the time for filing a petition for writ of certiorari in the Supreme Court of the United States expired. See Sup. Ct. R. 13(3) ("[t]he time to file a petition for . . . writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate . . . ."); *Chavers v. Sec'y, Fla. Dep't of Corr.*, 468 F.3d 1273, 1274-75 (11th Cir. 2006) (stating the 90-day period begins to run from the date of entry of judgment and not the issuance of the mandate). Petitioner therefore had one year from January 3, 2008, in which to file a timely federal habeas petition under 28 U.S.C. § 2254. His federal habeas petition was filed on April 18, 2012,[1] more than four years after his conviction became final. Accordingly, unless the limitation period was tolled by a properly filed state court post-conviction application, Petitioner's federal petition is untimely.

---

[1]Although the Court received the petition on April 23, 2012, a *pro se* inmate's pleading is deemed filed the date it is delivered to prison officials for mailing. *Houston v. Lack*, 487 U.S. 266, 271-272 (1988); *Adams v. United States*, 173 F.3d 1339, 1340-41 (11th Cir. 1999). Petitioner provided the petition to prison officials for mailing on April 18, 2012 (Dkt. 1 at p. 1).

On February 19, 2008, 47 days after his conviction became final, Petitioner filed a motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850 (Resp. Ex. 6a), and a memorandum of law in support of the motion (Resp. Ex. 6b).[2]  The Rule 3.850 motion included a sworn oath required by Florida law (Resp. Ex. 6a at p. 9).[3]  Nevertheless, the facts relied on to support the motion were set forth in the memorandum of law rather than the motion itself (Resp. Exs. 6a, 6b).  And the assertions of fact in the attached memorandum of law were not made under oath (Resp. Ex. 6b). Therefore, on February 20, 2009, the state post-conviction court dismissed the motion without prejudice "to a [sic] file facially sufficient motion" within "120 days from the date of this order [.]" (Resp. Ex. 9).[4]

_____

[2]Petitioner subsequently sought to supplement his original motion with two separate Motion(s) for Leave to Amend Motion for Post-Conviction Relief, filed on April 7, 2008, and August 18, 2008, respectively (Resp. Exs. 7, 8).

[3]At the time Petitioner filed his Rule 3.850 motion on February 19, 2008, Rule 3.850(c), Fla.R.Cim.P., provided:

Contents of Motion. --The motion shall be under oath and include:

(1) the judgment or sentence under attack and the court which rendered the same;

(2) whether there was an appeal from the judgment or sentence and the disposition thereof;

(3) whether a previous postconviction motion has been filed, and if so, how many;

(4) if a previous motion or motions have been filed, the reason or reasons the claim or claims in the present motion were not raised in the former motion or motions;

(5) the nature of the relief sought; and

(6) a brief statement of the facts (and other conditions) relied on in support of the motion.

This rule does not authorize relief based on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence.

[4]The state post-conviction court's order states in full:

This matter is before the Court on the Defendant's pro se Motion for Post Conviction Relief, and Brief and Memorandum of Law in Support of Motion for Post Conviction Relief, each filed on February 25, 2008, pursuant to Florida Rule of Criminal Procedure 3.850.  After reviewing the

Respondent contends that the Rule 3.850 motion was not "properly filed," and therefore did not toll the AEDPA statute of limitations, because the motion did not comply with Florida's written oath requirement (see Dkt. 14 at pp. 4-6).   The Court agrees.

"Under Florida law, a Rule 3.850 motion for post-conviction relief must. . .contain either a notarized or an unnotarized oath."  *Jones v. Sec'y, Florida Dep't of Corr.*, 499 Fed. Appx. 945, 950 (11th Cir. 2012) (unpublished) (citing Fla. R. Crim. P. 3.987(1)).  *See also* Fla. R. Crim. P. 3.850(c). "The purpose of the oath is to prevent false factual allegations by subjecting the movant to prosecution for perjury if the factual allegations in the motion prove to be false."  *Stevens v. State*, 947 So. 2d 1227, 1228 (Fla. 2d DCA 2007) (citing *Scott v. State*, 464 So. 2d 1171 (Fla. 1985)). Under Florida law, a Rule 3.850 motion is not in compliance with the requirement that the motion be under oath where the motion itself includes a sworn oath, but the facts are set forth in a memorandum that does not have a sworn oath.  *See Clemmons v. State*, 959 So. 2d 825, 826 (Fla. 4th DCA 2007) ("appellant's [Rule 3.850] motion did not comply with the rule requirement that the motion be under oath. . .[where] the motion itself was sworn, [but] the facts were included in a

---

Defendant's motion and memorandum, the Court finds that the Defendant's memorandum fails to comply with the oath requirement pursuant to Fla. R. Crim. P. 3.850(c).

At the end of the Defendant's post conviction motion, he signed a declaration in which he states "that I have read the foregoing motion and that all the facts stated in it are true."  All of the facts and legal analysis on which the Defendant relies to support his motion, however, are contained in an unsworn memorandum attached to the Defendant's post conviction motion.  Because the memorandum is not adequately sworn to, the Court will not entertain the merits of the allegations raised in the memorandum.

It is therefore,

**ORDERED AND ADJUDGED** that the Defendant's Motion for Post Conviction Relief is **DISMISSED** without prejudice in order for the Defendant to cure this deficiency.  The Court grants the Defendant 120 days from the date of this order to a [sic] file facially sufficient motion.

(Resp. Ex. 9) (footnote omitted).

4

memorandum which was not sworn.") (citation omitted); *Gonzalez v. State*, 869 So. 2d 775 (Fla. 5th DCA 2004) (sworn Rule 3.850 motion did not contain facts; unsworn memorandum of law attached to motion which stated facts insufficient to cure motion).   "[A] Rule 3.850 motion that [does] not contain the written oath required by Florida law [is] not 'properly filed' under § 2244(d)(2) and, thus, [does] not toll AEDPA's one-year limitations period." *Jones*, 499 Fed. Appx. at 950 (citing *Hurley v. Moore*, 233 F.3d 1295, 1297-98 (11th Cir. 2000)).

Although Petitioner's February 19, 2008 Rule 3.850 motion included a sworn oath, the facts in support of his claims were set forth in the memorandum, which did not include a sworn oath.  The motion therefore did not comply with Rule 3.850's oath requirement.  Consequently, the motion was not "properly filed" and therefore did not toll the AEDPA's limitation period.

On October 23, 2009 (245 days after the original Rule 3.850 motion was dismissed), Petitioner filed his "Amendment/Supplement to Pending Motion for Post-Conviction Relief and Motion(s) for Leave to Amend Motion for Postconviction Relief" ("second Rule 3.850 motion") (Resp. Ex. 12).  However, because the federal limitation period already expired on January 8, 2009 (one year after Petitioner's conviction became final on January 8, 2008), neither his second Rule 3.850 motion, nor any of his subsequently filed motions, tolled the federal limitation period.  *See Moore v. Crosby*, 321 F.3d 1377, 1381 (11th Cir. 2003) (Rule 3.850 motion, "filed after expiration of the limitations period[,]  does not relate back so as to toll idle periods preceding the filing of the federal [habeas] petition"); *Tinker v. Moore*, 255 F.3d 1331, 1333 (11th Cir. 2001) (where a Rule 3.850 motion is filed after the expiration of the federal limitation period, it does not toll the period under § 2244(d)(2) because no period remains to be tolled).  Therefore, absent equitable tolling or

a showing of actual innocence,[5] Petitioner's federal habeas petition is time-barred.

Petitioner does not demonstrate that he is actually innocent of the crime for which he was convicted.  He does, however, argue that he is entitled to equitable tolling (Dkt. 21 at pp. 4-6).

The limitation period under § 2244(d) is subject to equitable tolling. *Sibley v. Culliver*, 377 F.3d 1196, 1204 (11th Cir. 2004).  Section 2244 "permits equitable tolling 'when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable with diligence.'"  *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000) (quoting *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999) (per curiam)); *Arthur v. Allen*, 452 F.3d 1234, 1252 (11th Cir. 2006) (petitioner must show both extraordinary circumstances and diligence).  Equitable tolling applies, however, only in truly extraordinary circumstances, *Jones v. United States*, 304 F. 3d 1035, 1039-1040 (11th Cir. 2002), and where the litigant satisfies his burden of showing that he has been pursuing his rights diligently and that some extraordinary circumstance "stood in his way and prevented timely filing."  *Holland v. Florida*, 130 S.Ct. 2549, 2562 (2010).

Petitioner has not satisfied his burden of showing circumstances justifying equitable tolling.  First, Petitioner makes no showing of extraordinary circumstances which prevented him from filing a timely federal habeas petition.  Petitioner contends that the state post-conviction court's delay of one year before dismissing Petitioner's original Rule 3.850 motion warrants equitable tolling of the limitations period (Dkt. 21 at pp. 4-5).  The delay in dismissing the motion does not itself amount to an extraordinary circumstance, especially where there is no evidence that the delay was a consequence of malfeasance on the part of the State.  *See Hill v. Jones*, 242 Fed. Appx. 633, 637

---

[5] *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013) ("We hold that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations.").

(11th Cir. 2007) (unpublished).  Moreover, the delay did not prevent Petitioner from asserting his rights because he could have filed a protective federal habeas petition and requested a stay until his state remedies were exhausted.  *See Colbert v. Head*, 146 Fed. Appx. 340, 344 n.5 (11th Cir. 2005) (unpublished) ("a 'petitioner trying in good faith to exhaust state remedies [who] may litigate in state court for years only to find out at the end that he was never 'properly filed' and thus that his federal habeas petition is time barred,' may avoid this predicament by filing a 'protective' petition in federal court. . .asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted.") (quoting *Pace v. Diguglielmo*, 125 S.Ct. 1807, 1813 (2005)).  Therefore, because Petitioner has failed to show that the State prevented Petitioner from filing a timely federal habeas petition, he has not demonstrated a truly extraordinary circumstance warranting equitable tolling.

Second, even if it were to be assumed that Petitioner met the extraordinary circumstance prong, he has failed to demonstrate that he acted with due diligence.  "The diligence required for equitable tolling purposes is reasonable diligence."  *Holland*, 130 S. Ct. at 2565.  The question therefore is whether Petitioner has established that he pursued his right to file a federal habeas petition under 28 U.S.C. § 2254 with reasonable diligence.  *See Melson v. Comm'r*, 713 F.3d 1086, 1090 (11th Cir. 2013) (when a habeas petitioner fails to demonstrate that he exercised reasonable diligence in pursuing his federal remedies, he is not entitled to equitable tolling of the AEDPA's statute of limitations).

Petitioner has failed to demonstrate that he pursued his right to file a federal habeas petition with reasonable diligence.  He has not alleged that he ever filed a motion or other inquiry with the state post-conviction court to obtain a disposition of his original Rule 3.850 motion while it was pending for more than one year without any judicial action.  *See San Martin v. McNeil*, 633 F.3d

1257, 1269 (11th Cir.), *cert. denied*, 132 S. Ct. 158 (2011)) ("efforts to learn the disposition of pre-federal habeas steps are crucial to determining whether equitable tolling is appropriate."); *Bernadeu v. Sec'y, Dep't of Corr.*, 432 Fed. Appx. 823, 824 (11th Cir. 2011) (unpublished) ("Bernadeu took no action to learn the status of his state court case for more than seven months, during which time the statute of limitations expired. The district court thus did not err in finding that Bernadeu did not act diligently during this delay.").   Additionally, even after the state post-conviction court dismissed his Rule 3.850 motion on February 20, 2009, Petitioner waited more than eight months before filing his second Rule 3.850 motion, and more than three years before filing his federal habeas petition. These lengthy delays do not convey diligence. Consequently, Petitioner is not entitled to equitable tolling.

Accordingly, because Petitioner's petition is untimely, and he is note entitled to equitable tolling of the limitations period, his federal habeas petition is time-barred.

**II. Merits**

Even if the petition is not time-barred, it does not warrant federal habeas relief.

**STANDARD OF REVIEW**

The AEDPA governs this Section 2254 habeas proceeding. *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000). Section 2254(d), which creates a highly deferential standard for federal court review of state court adjudications, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). *See Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas

'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell*, 535 U.S. at 693. Federal courts must afford due deference to a state courts decision. "AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010).

In *per curiam* decisions without written opinions the state district court of appeal affirmed Petitioner's judgment of conviction (Resp. Ex. 4) and the denial of Petitioner's Rule 3.850 motion (Resp. Ex. 18). The affirmance in each case warrants deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003).

Petitioner bears the burden of overcoming a state court factual determinations by clear and convincing evidence. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact, but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001). The state courts' rejection of Petitioner's post-conviction claims warrants deference in this action.

**Standard of Review for Ineffective Assistance of Counsel**

*Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective

assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland v. Washington*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims v. Singletary*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id*. And, because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment," Petitioner must demonstrate that counsel's error prejudiced the defense. *Strickland v. Washington*, 466 U.S. at 691-92.

## ANALYSIS

### Ground One

Petitioner contends that the state trial court erred in denying his motion to suppress a

11

recorded statement he gave to police in violation of his rights under *Miranda v. Arizona*, 384 U.S.

436 (1966).  Petitioner alleges that the *Miranda* warning he received was insufficient because it did

not specifically advise him of his right to have "appointed counsel without cost to him."  (Dkt. 1 at

p. 5) (emphasis in original).

Following Petitioner's arrest on October 27, 2005, Petitioner gave a recorded statement at

the Sheriff's office (Resp. Ex. 1, Vol. I at record pp. 66-96).  During the recorded statement,

Petitioner made incriminating remarks, including that his penis penetrated the 10-year old victim's

vagina (Id. at record p. 88).  Prior to trial, Petitioner's counsel filed an amended motion to suppress

the statements, arguing, in pertinent part, that Petitioner was not fully apprised of his rights (Id. at

record pp. 13-15).  A hearing on the motion was held on October 6, 2006 (Id. at record pp. 65-111).

During the hearing, Petitioner's recorded statement was played (Id. at record pp. 80-96).  At the

beginning of the tape recording, Detective Patterson read Petitioner his rights, stating as follows:

> All right, Kevin, I'm going to read you your rights now, okay?  You have the
> right to remain silent.  Anything you say can and will be used against you in a court
> of law.  You have the right to talk to a lawyer and have him or her present with you
> while you're being questioned.  If you cannot afford to hire a lawyer, one will be
> appointed to represent you before any questioning if you wish.  You can decide at any
> time to exercise these rights and not answer any questions or make any statements.
> Do you understand each of the rights I've explained to you?

(Id. at record p. 80).  At the conclusion of the evidentiary hearing, the state trial court found that

Petitioner's statement "was freely and voluntarily made, the Miranda warnings were properly

administered to [Petitioner], and [Petitioner] knowingly and voluntarily waived them."  (Id. at record

p. 110).  During trial, Petitioner's recorded statement was published to the jury (Resp. Ex. 1, Vol.

V at transcript pp. 430-46).

On direct appeal, Petitioner argued that the *Miranda* warnings he received were inadequate

because he was not advised that an attorney would be provided to him without cost (Resp. Ex. 2). The state appellate court per curiam affirmed the judgment of conviction without a written opinion (Resp. Ex. 4).

The state appellate court's denial of this claim was not objectively unreasonable. Detective Patterson informed Petitioner, in pertinent part, that "You have the right to talk to a lawyer and have him or her present with you while you're being questioned. If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning if you wish." These warnings adequately conveyed to Petitioner his right to have a lawyer appointed if he could not afford one prior to and during interrogation. *See United States v. Buonsignore*, 131 Fed. Appx. 252, 257-58 (11th Cir. 2005) (unpublished) (rejecting defendant's argument that "*Miranda* warnings given to him were constitutionally insufficient because they did not explicitly advise him of his right to have a lawyer appointed at no cost" where warnings given to defendant "included the right to have a lawyer appointed for [defendant].").

The state appellate court's denial of this claim was not contrary to or an unreasonable application of, clearly established federal law as determined by the Supreme Court, nor was it based on an unreasonable determination of the facts. Accordingly, Ground One does not warrant federal habeas relief.

**Ground Two**

In Ground Two, Petitioner asserts eleven sub-claims: 1) nine ineffective assistance of counsel claims (Issues 1-3 and 5-10); 2) one claim that he was denied a fair trial because he was denied his right to be present during bench conferences, depositions of witnesses, and during the swearing of the jury venire (Issue 4); and 3) one claim that he was denied his right to be tried by a

jury of his peers (Issue 11).[6]

A. Issue 1

Petitioner contends that counsel was ineffective in failing to adequately investigate "the facts of the case." Specifically, Petitioner asserts 1) that had counsel taken the deposition of the doctor who examined the victim, counsel would have discovered that the examination revealed "no medical evidence of physical abuse," and 2) counsel "ignored available information related the [sic] to the DNA evidence found on the child's bedding which in fact belonged to the Petitioner's youngest brother." (Dkt. 1 at p. 7). Petitioner further asserts that counsel was ineffective in failing "to impeach both the victim and the victim's mother with the examining doctor's testimony concerning his examination of the child victim since such testimony would have affirmed the lack of physical evidence. . . ." (Id.).

Petitioner raised this claim in Issue 1 of his Rule 3.850 motion (Resp. Ex. 6b at pp. 3-8). In denying the claim, the state post-conviction court stated:

> First, the Defendant alleges that his trial counsel was ineffective for "fail[ing] to conduct a thorough, independent investigation of facts of the case." In support of this claim, the Defendant further alleges that defense counsel "conducted no depositions," and would have discovered that "there was no medical evidence of physical abuse" if he had deposed the doctor who examined the child victim. The Defendant also claims that he was prejudiced by defense counsel's "failure to impeach both victim and victim's mother" with the examining doctor's "testimony concerning his examination of the child victim" because such testimony "would have affirmed the lack of physical evidence" and "would have raised a serious, reasonable doubt in the minds of the jurors" as to the Defendant's guilt. The Defendant further claims that defense counsel ignored "available information . . .that the DNA evidence found on child victim's bedding was in fact the DNA of [the Defendant's] younger brother."

---

[6]With regard to Ground Two, Issue 12, Petitioner states that he "concedes error in raising the twelfth claim in the state court and abandons the claim in this petition." (Dkt. 1 at p. 10).

The Defendant's claims under this ground are conclusively refuted by the record. First, with regard to the Defendant's brother's DNA being on the comforter, that was explained by both Stanley Jones, who is the Defendant's half-brother and the victim's stepfather, and Christina Jones, the victim's mother. Indeed, both Mr. and Mrs. Jones testified that they had been physically intimate on the comforter. Moreover, Florida Department of Law Enforcement crime laboratory analyst Beth Ordeman's testimony explained that the stains on the comforter were consistent with samples from both Mr. and Mrs. Jones and occurred "together" in each spot, consistent with it being the result of a sexual encounter between them. Notably, the child victim was excluded from the stains found on the comforter.  In light of this reasonable explanation for the presence of the stepfather's DNA on the comforter and the absence of any of the victim's DNA on the same comforter, the Court finds that the Defendant could not have been prejudiced by defense counsel's failure to capitalize on the presence of the stepfather's DNA on the comforter.

The Defendant has also failed to establish prejudice with regard to defense counsel's failure to investigate, depose, and present the testimony of the medical doctor who examined the child victim. Initially, the Court notes that the absence of physical evidence does not inherently indicate that no sexual acts occurred. In the instant action, the jury already found the Defendant guilty *without* any DNA or other physical evidence being presented. Thus, the Court is hard pressed to find that a medical doctor's testimony confirming a lack of physical evidence would have changed the outcome, especially considering the passage of time between the sexual battery and the doctor's examination of the victim. Under the facts of this case, the sexual battery of the child occurred while her mother was away and she did not disclose the incident to anyone until about a week after her mother returned. Most importantly, *after* receiving a *Miranda* warning, the Defendant *admitted* having sex with the 10-year old victim. In light of his confession, the Court is not convinced that the outcome of the proceeding would have been different if defense counsel had presented a doctor's testimony concerning the lack of physical evidence. This claim is, therefore, denied.

(Resp. Ex. 14 at pp. 3-5) (alterations and emphasis in original) (footnotes omitted).

The state post-conviction court's decision that Petitioner failed to establish prejudice was not

objectively unreasonable.  Petitioner only speculates on the doctor's (who examined the victim)

proposed testimony and presents no evidence that the doctor would have testified that the victim did

not sustain physical trauma.  Additionally, the State's DNA expert testified that she discovered DNA

from the victim and the victim's stepfather and mother on the bedding that was provided to her, but

15

did not find Petitioner's DNA on the bedding (Resp. Ex. 1, Vol. V at transcript pp. 378-86). Moreover, defense counsel did not "ignore[] available information related to the DNA evidence found on the child's bedding. . . ." (see Dkt. 1 at p. 7).   Rather, during closing argument, defense counsel highlighted the lack of physical evidence, including the lack of Petitioner's DNA on the bedding and lack of evidence of trauma to the victim, and argued that such lack of evidence linking Petitioner to the crime created reasonable doubt (Id. at transcript pp. 537-43).

In light of the fact that defense counsel made the jury aware that the State presented no physical evidence linking Petitioner to the crime, and in light of the strong evidence presented by the State, including Petitioner's recorded statement in which he admitted penetrating the victim's vagina with his penis,  Petitioner offers no reason to believe that there is a reasonable probability that the outcome of the trial would have been different had counsel 1) called the medical doctor to testify, and 2) cross-examined the victim and her mother regarding the lack of physical evidence of trauma to the victim. *See, e.g., United States v. Tavares*, 100 F.3d 995, 998, 321 U.S. App. D.C. 381, (D.C.Cir. 1996) (where the record establishes no reasonable probability that the defendant's asserted testimony would have changed the outcome of the trial, the defendant has failed to make a showing of prejudice). Consequently, Petitioner has failed to demonstrate prejudice.

The state post-conviction court's denial of this claim was neither contrary to nor an unreasonable application of *Strickland*.  Accordingly, Ground Two, Issue 1 does not warrant federal habeas relief.

B. Issue 2

Petitioner contends that counsel was ineffective in failing to object to the victim's mother (a layperson) offering an expert opinion.  Petitioner argues that the mother offered an "expert

opinion" when she testified that Petitioner "had taken away something from her child that the child

could never get back."

Petitioner raised this claim in Issue 2 of his Rule 3.850 motion (Resp. Ex. 6b at pp. 9-10).

In denying the claim, the state post-conviction court stated:

> Next, the Defendant alleges that his trial counsel was ineffective for "fail[ing] to properly object and preserve for appeal denial of mistrial after the State's witness a layman, victim's mother was allowed to offer an 'expert' opinion as to the medical doctor's possible findings of examination of child victim's abuse." In support of this claim, the Defendant complains that the victim's mother testified that the Defendant "had taking [sic] away something from her child that the child could never get back." The Defendant argues that such a statement constitutes an "expert opinion given by a layman." The Defendant concludes, "No witness, unless he/she has actually seen the defendant commit the charged offense, may render an opinion that the accused is guilty."

> Again, the Defendant's allegations are conclusively refuted by the record. Having reviewed the victim's mother's testimony in its entirety, the Court finds that Ms. Jones did not offer any impermissible opinions.  Nor is there any indication in the record that Ms. Jones's testimony included a statement similar to the paraphrased "opinion" alleged by the Defendant to have been offered. Defense counsel cannot be ineffective for failing to object to a purported opinion that was never offered during trial testimony. Consequently, this claim is also denied.

(Resp. Ex. 14 at p. 5).

The state post-conviction court's determination that Petitioner failed to demonstrate deficient

performance was not objectively unreasonable, and was not based on an unreasonable determination

of the facts.  The state post-conviction court correctly found that the victim's mother, Christina

Jones, neither testified that Petitioner "had taken away something from her child that the child could

never get back," nor offered an impermissible opinion (see Resp. Ex. 1, Vol. IV at transcript pp. 345-

59).[7]   Therefore, because Christina Jones never offered testimony that amounted to an opinion,

defense counsel was not deficient in failing to object to Christina Jones' testimony on the ground that

she offered impermissible opinion testimony.

The state post-conviction court's denial of this claim was neither contrary to nor an

unreasonable application of *Strickland*, and was not based on an unreasonable determination of the

facts.   Accordingly, Ground Two, Issue 2 does not warrant federal habeas relief.

C. Issue 3

Petitioner contends that trial counsel rendered deficient performance when he "(1) failed to

secure evidence showing that there was not medical evidence to substantiate the allegations of sexual

battery/abuse, and (2) failed to conduct any investigation into the lack of medical evidence of sexual

abuse." (Dkt. 1 at pp. 7-8).   Initially, this claim is conclusory, unsupported by facts, and is therefore

subject to dismissal without an evidentiary hearing. *See Machibroda v. United States*, 368 U.S. 487

(1962) (conclusory allegations, unsupported by specifics, are subject to summary dismissal); *Tejada

v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (a movant is not entitled to habeas corpus relief

when the claims are merely conclusory allegations unsupported by specifics); *San Martin v. McNeil*,

633 F.3d 1257, 1271 (11th Cir. 2011) ("'An evidentiary hearing may be necessary where the material

facts are in dispute, but a petitioner is not entitled to an evidentiary hearing when his claims are

merely conclusory allegations unsupported by specifics.'") (quoting *Pugh v. Smith*, 465 F.3d 1295,

1300 (11th Cir. 2006)).

---

[7]In Florida, a lay witness may not testify to an opinion reserved for experts, or comment on the defendant's guilt or innocence.   See Section 90.701-703, Fla.Stat.; *Bush v. State*, 809 So. 2d 107, 119 (Fla. 4th DCA Dist. 2002) ("A witness may not provide his or her opinion as to the guilt or innocence of a criminally accused.").

Moreover, to the extent that, liberally construed, Issue 3 raises the same allegations presented in Issue 3 of Petitioner's state Rule 3.850 motion (see Resp. Ex. 6b at pp. 10-16), the claim does not warrant relief.  In Issue 3 of the Rule 3.850 motion, Petitioner alleged that counsel was ineffective in 1) failing to investigate and obtain medical records from the doctor who examined the victim after the alleged sexual battery to establish that there was no "medical evidence" of a sexual battery, and 2) failing to consult with and retain an expert to review the evidence and render an opinion regarding the significance of the lack of medical evidence in the case (Id.).   In denying the claim, the state post-conviction court stated:

> In his third ground for relief, the Defendant once again alleges that his trial counsel was ineffective for failing to conduct a "thorough investigation of facts surrounding the charge and possible defense.["]   Specifically, the Defendant complains that counsel (1) "failed to secure evidence showing that there was no medical evidence to substantiate the allegations of sexual abuse," and (2) "failed to conduct any investigation into the conceded lack of medical evidence of sexual abuse."
>
> The Defendant's claims under Ground Three are essentially a reiteration of the claims raised in Ground One. As the Court previously noted in Ground One, the absence of physical evidence does not inherently indicate that no sexual acts occurred, especially when at least a week passed between the sexual battery and the victim's disclosure of the incident. Moreover, the Defendant confessed to having sex with the 10-year old victim. Therefore, adopting the findings and reasoning set forth under Ground One, *supra,* the Court finds that the Defendant was not prejudiced by defense counsel's alleged failure to thoroughly investigate the lack of medical evidence defense. This claim is likewise denied.

(Resp. Ex. 14 at p. 6).

The state post-conviction court's determination that Petitioner failed to demonstrate prejudice was not objectively unreasonable, and was not based on an unreasonable determination of the facts. Petitioner has failed to present any evidence that the doctor's medical examination of the victim found no medical evidence of sexual abuse.  And even if the examination did not reveal any evidence

of abuse, Petitioner offers no reason to believe that there is a reasonable probability that the outcome of the trial would have been different had counsel presented this evidence.  Petitioner's case did not come down to a swearing match between him and the victim.  Rather, the jury heard Petitioner's recorded statement in which he admitted that he put his penis inside the 10-year old victim's vagina.  Consequently, Petitioner has failed to show that he was prejudiced by counsel's failure to allegedly investigate the lack of medical evidence of sexual abuse.

The state post-conviction court's denial of this claim was neither contrary to nor an unreasonable application of *Strickland*, and was not based on an unreasonable determination of the facts.  Accordingly, Ground Two, Issue 3 does not warrant federal habeas relief.

D. Issue 4

In Ground Two, Issue 4, Petitioner appears to assert the following claims:

> 1. He was denied his right to be present at all stages of his criminal proceedings when he was absent during eleven bench conferences, all depositions, and the swearing of the jury pool;
>
> 2. He was denied his right to confront the witnesses against him when he was absent during the depositions; and
>
> 3. He was denied a fair trial before an impartial jury because the jury pool was not sworn.

Petitioner raised these claims, or similar claims, in Issue 4 of his Rule 3.850 motion (Resp. Ex. 6b at pp. 17-24). In denying the claims, the state post-conviction court stated:

> In his fourth ground for relief, the Defendant alleges he was prejudiced by being "absent" from certain stages of the proceedings, including bench conferences, depositions of witnesses, and the swearing of the jury venire.
>
> **1. Absence at Bench Conferences**
>
> The Defendant complains that during his trial "no less than eleven bench

20

conferences occurred without him." The Defendant further alleges that his presence at such conferences could have assisted his defense. The Florida Supreme Court has previously explained why a claim such as the Defendant's must fail "when the defendant has failed to show that anything was discussed at the conference that required the defendant's consultation." As the Supreme Court detailed:

> "A defendant has a constitutional right to be present at all 'crucial stages of his trial where his absence might frustrate the fairness of the proceedings.'" *Orme v. State*, 896 So.2d 725, 738 (Fla.2005) (quoting *Garcia v. State*, 492 So.2d 360 (Fla.1986)). However, this right "does not confer upon the defendant the right to be present at every conference at which a matter pertinent to the case is discussed, or even at every conference with the trial judge at which a matter relative to the case is discussed." *Orme*, 896 So.2d at 738 (quoting *United States v. Vasquez*, 732 F.2d 846, 848 (11th Cir.1984)). Accordingly, this constitutional right "does not extend to bench conferences involving purely legal matters" because a defendant's presence at such conferences "would be of no assistance to counsel." *Rutherford v. Moore*, 774 So.2d 637, 647 (Fla.2000); *see also Hardwick v. Dugger*, 648 So.2d 100, 105 (Fla.1994) ("[A] defendant has no constitutional right to be present at the bench during conferences that involve purely legal matters.").

The Defendant's conclusory allegations in the instant action fail to establish that anything was discussed during those eleven conferences that required his consultation. He also fails to establish that those conferences involved anything but purely legal matters to which his constitutional right to be present does not extend. Thus, the Defendant has failed to demonstrate that he was prejudiced, and this claim will be denied.

## 2. Absence at Depositions of Witnesses

Citing the right to confront witnesses against him, the Defendant next complains that he was barred from being present at any deposition and was consequently deprived of his "constitutional right of confrontation and to assist his own counsel in questioning for the purpose of exposing the truth."

The Defendant's claims under this subsection are without merit. Indeed, he has not "demonstrated that any prejudice resulted from his absence during the depositions." Nor is he likely able to demonstrate the requisite prejudice since "[d]epositions do not implicate the same concerns as trial testimony." "While it is crucial for a defendant to be able to consult with his attorney at trial in order to aid him in conducting the examination of a witness, the same is not true of a deposition."

The Florida Supreme Court has explained the difference by pointing out that "in any deposition, if defense counsel had failed to pursue some avenue of questioning or missed some critical fact, he was fully able to go back and supplement the deposition after consultation with the defendant." Because the Defendant had no constitutional right to be present at the depositions, and has not established that he was prejudiced by his absence from them, this claim will also be denied.

### 3. Absence at Swearing of Jury Pool

The Defendant also alleges that he was prejudiced by his counsel's failure "to assure that the prospective jurors were properly sworn prior to *voir dire*." While stating that he "did not voluntarily absent himself from any portion of the jury selection process," the Defendant also alleges that nothing in the trial transcript reflects that any oath was administered to the prospective jurors prior to *voir dire*. The Defendant further alleges that in the absence of the prospective jurors being sworn prior to *voir dire*, "they were not legally bound to be truthful." Consequently, the Defendant concludes "it cannot be said" that he received a "fundamentally fair trial before an impartial jury."

The Defendant's claims under this ground are conclusively refuted by the record. Typically, the jury venire is sworn prior to any *voir dire* proceedings. Consistent with standard practices, on November 27, 2006, Manatee County Deputy Clerk Marlene Moran "swore in" the entire jury venire prior to sending them up for *voir dire* questioning in the Defendant's case. This is evidenced by the attached copy of a ledger sheet, which is kept as a routine business practice by the Manatee County Clerk of Court's Jury Coordinator. Because the jury venire was sworn prior to *voir dire* in this case, the Defendant has not, indeed cannot, establish that he was prejudiced in this regard. Thus, this claim is likewise denied.

(Resp. Ex. 14 at pp. 6-9) (footnotes omitted).

A defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure. *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987); *Hodges v. Attorney General, State of Fla.*, 506 F.3d 1337 (11th Cir. 2007); *Diaz v. Sec'y for Dept. Of Corr.*, 402 F.3d 1136, 1141 (11th Cir. 2005). However, under both federal and Florida law, a defendant has no constitutional right to be present at bench conferences that involve purely legal matters. *See In re Shriner*, 735 F.2d 1236, 1241 (11th Cir.

1984) (citation omitted); *Hardwick v. Dugger*, 648 So.2d 100 (Fla. 1994). Petitioner has failed to allege, or present any facts or evidence showing, that the eleven bench conferences at which he was not present involved anything other than purely legal matters. Therefore, Petitioner has failed to demonstrate that he had a constitutional right to be present at the bench conferences. Accordingly, the state post-conviction court's denial of this claim was not contrary to clearly established federal law.

The state post-conviction court's determination that Petitioner "had no constitutional right to be present at the depositions" likewise was not contrary to clearly established federal law. Petitioner has not cited any binding authority, and this Court is aware of none, from the United States Supreme Court holding that depositions are a critical stage of the criminal proceedings triggering a criminal defendant's fundamental right to be present. Further, Petitioner has failed to allege facts tending to show a reasonable probability that his attendance at the depositions would have changed the outcome of the proceedings. And to the extent Petitioner asserts his right to confront witnesses was violated, the Confrontation Clause "guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." *Coy v. Iowa*, 487 U.S. 1012, 1016 (1988). However, the Court is not aware of any Supreme Court authority extending this right to pre-trial depositions.

Finally, under Florida law Petitioner has no right to be present during the swearing of the jury pool. *See Anderson v. State*, 18 So. 3d 501, 522 (Fla. 2009) (citing *Robinson v. State*, 520 So. 2d 1, 4 (Fla. 1988)). Further, Petitioner has not cited any binding authority, and this Court is aware of none, from the United States Supreme Court holding that the swearing of the jury venire is a critical stage of the criminal proceedings triggering a criminal defendant's fundamental right to be present. And to the extent Petitioner asserts he was denied a fair trial because the jury venire was not sworn,

he does not overcome the state court's factual finding that the jury venire was sworn by clear and convincing evidence.  28 U.S.C. § 254(e)(1); *Sneed v. Fla. Dep't of Corr.*, 496 Fed. Appx. 20, 23 (11th Cir. 2012) ("To overcome the deference owed to state court factual determinations, a petitioner must present clear and convincing evidence that the state court's factual findings were unreasonable.") (citations omitted).

Petitioner has failed to show that the state post-conviction court's denial of this claim was contrary to or an unreasonable application of federal precedent or based on an unreasonable determination of the facts.  Accordingly, Ground Two, Issue 4 does not warrant federal habeas relief.

E. Issue 5

Petitioner contends that trial counsel was ineffective in failing to state specific grounds in his motions for judgment of acquittal made at the close of the State's case and after the defense rested. In state court, Petitioner raised this claim in Issue 5 of his Rule 3.850 motion (Resp. Ex. 6b at pp. 25-26).  In denying the claim, the state post-conviction court stated:

> In Ground Five, the Defendant alleges that his trial counsel was ineffective for requesting a directed judgment of acquittal "without specific reasoning." The Defendant further alleges that because his trial counsel "failed to make a specific legal argument" the issue was not preserved for direct appeal.
>
> The Defendant's claim under this ground leads to no avail. "When there is no showing that a motion for Judgment of acquittal had a likelihood of success, a movant has not presented a facially sufficient claim of ineffectiveness of counsel." It is well settled that in moving for a judgment of acquittal, a defendant admits all facts and evidence adduced at trial, and all reasonable inferences that may be drawn from such evidence must be viewed in a light most favorable to the State. In the Defendant's case, the State not only called the minor victim, who testified that the Defendant had intercourse with her, but also introduced an audio-taped interview of the Defendant by law enforcement personnel. In such interview, the Defendant admitted to having sex with the 11-year old victim. Thus, contrary to his present intimations, there was enough evidence introduced at trial to support the Defendant's conviction.

The Defendant has not demonstrated that the State failed to prove one or more essential element of sexual battery upon a child less than twelve years of age. Consequently, he has not demonstrated that a more artfully presented motion for judgment of acquittal would have had any likelihood of success. Thus, the Court will deny the Defendant's claim for relief under Ground Five.

(Resp. Ex. 14 at pp. 9-10) (footnotes omitted).

The state post-conviction court's determination that Petitioner failed to demonstrate prejudice was not objectively unreasonable, and was not based on an unreasonable determination of the facts. Initially, the record belies Petitioner's contention that counsel failed to assert specific grounds in support of the motion for judgment of acquittal.  In support of the motion, counsel argued that there was insufficient evidence for the matter to go to the jury because the victim never specifically identified Petitioner as the perpetrator of the crime (Resp. Ex. 1, Vol. V at transcript pp. 473-74). Petitioner has not alleged that counsel should have argued additional grounds in support of the motion for judgment of acquittal.  Moreover, the state post-conviction court has answered the question of what would have happened had defense counsel " more artfully presented [the] motion for judgment of acquittal" - - the motion would have been denied because "there was enough evidence introduced at trial to support the Defendant's conviction."[8]   Consequently, Petitioner has

---

[8]This Court "must defer to the state court's determination that a motion for judgment of acquittal may not be properly granted under Florida law, unless the evidence is such that no view which the jury may lawfully take favorable to the State may be sustained under the law."  *Link v. Tucker*, 870 F. Supp. 2d 1309, 1342 (N.D. Fla. 2012) (citing *Sapp v. State*, 913 So. 2d 1220, 1223 (Fla. 4th DCA 2005)).  The trial transcript confirms the state post-conviction court's finding that there was sufficient evidence for the jury to convict Petitioner of sexual battery upon a child less than 12 years of age.  To prove that charge, the State was required to prove that the victim was less than 12 years old, and that Petitioner's penis penetrated or had union with the victim's anus and/or vagina (see Resp. Ex. 1, Vol. VI at transcript p. 588).  The State presented evidence that the victim was 10 years old at the time of the incident, and that Petitioner's penis penetrated the victim's anus and vagina (see, e.g., Resp. Ex. 1, Vol. III at transcript pp. 201-02, 206).  Therefore, there is no reasonable probability that the state trial court would have granted the motion for judgment of acquittal, even if counsel had made a more "artful" argument.

failed to establish deficient performance or prejudice. *See e.g., Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (Alabama Court of Criminal Appeals had already answered the question of what would have happened had counsel objected to the introduction of petitioner's statements based on state decisions; the objection would have been overruled; therefore, counsel was not ineffective for failing to make that objection).

The state post-conviction court's denial of this claim was neither contrary to *Strickland* nor based on an unreasonable determination of the facts.  Accordingly, Ground Two, Issue 5 does not warrant federal habeas relief.

F. Issue 6

In the recorded statement Petitioner gave to law enforcement following his arrest, Petitioner admitted that while he was lying in bed with the victim, he penetrated her vagina from behind (Resp. Ex. 1, Vol. V at transcript pp. 437-38).  Petitioner alleges that "he was forced to make his confession because the police mistreated and beat him."  (Dkt. 1 at p. 9).  He contends that trial counsel rendered ineffective assistance in failing to 1) "independently investigate the Petitioner's reasons for making a confession to a crime which he did not commit," and 2) "move[] to. . .suppress his confession on the basis that it was not freely and voluntarily given because of such mistreatment." (Id.).

In state court, Petitioner raised this claim in Issue 6 of his Rule 3.850 motion (Resp. Ex. 6b at pp. 27-30). In denying the claim, the state post-conviction court stated:

> In his sixth ground for relief, the Defendant alleges that his trial counsel was ineffective for failing "to independently investigate [the Defendant's] reason for making a confession to a crime which he did not commit." In support of this claim, the Defendant alleges that he previously "made claim that he was in fact mistreated and beaten by police while in custody."  The Defendant maintains that he was

"forced" to make his confession because the police allegedly mistreated and beat him. The Defendant further alleges that he confessed "in order to stop the abuse." The Defendant concludes that his trial counsel should have moved to suppress his confession on the basis that it was not freely and voluntarily given because of such mistreatment.

In order to prevail on this claim, the Defendant must allege facts sufficient to show that his counsel had a valid basis for filing a motion to suppress and that there is a reasonable probability the motion would have been granted. The Defendant's fantastic claims under this ground are, at best, not well received. The Defendant's trial counsel did file both a Motion to Suppress Statements, as well as an Amended Motion to Suppress Statements prior to trial, alleging that police "acted and made statements to mislead him, to delude him, and to exert undue influence over him by leading him to believe that unless he confessed he would be in more trouble." On October 6, 2006, the Defendant was granted a full hearing on his motions to suppress, but they were ultimately denied.

Contrary to his present assertions, there is nothing in the record to support his allegations that he made prior claims that he was mistreated and beaten by police while in custody. Rather, a review of the record indicates that the police interview of the Defendant was "very calm, very quiet, very low key, just like a conversation basically." Moreover, a review of the Defendant's taped police interview is consistent with Detective Bradley Patterson's testimony that the interview was "very calm, very quiet, very low key, just like a conversation basically." Finally, testimony offered at the hearing on the Defendant's motions to suppress by Detective Louis Licata, who "was present for the entire interview," establishes that no conversation (and impliedly, no alleged beating) took place before the tape recorder was turned on and, despite adequate Miranda warnings, the Defendant never indicated that he did not desire to speak with law enforcement.

In light of the foregoing, the Court finds the Defendant has failed to establish either that his counsel had a valid basis for filing a motion to suppress on the basis of police mistreatment or that there is a reasonable probability such a motion would have been granted. Thus, the Defendant's claims under this ground are without merit. Furthermore, it is well settled that "trial counsel cannot be deemed ineffective for failing to argue a nonmeritorious motion to suppress." Therefore, the Defendant has failed to establish a valid ground for relief, and this claim is denied.

(Resp. Ex. 14 at pp. 10-12).

The state post-conviction court's determination that Petitioner failed to demonstrate deficient

performance and prejudice was not objectively unreasonable, and was not based on an unreasonable

determination of the facts.  In support of its conclusion that counsel did not have "a valid basis for filing a motion to suppress on the basis of police mistreatment," the state post-conviction court found 1) that there was no evidence supporting Petitioner's allegation that he had previously claimed that he was mistreated and beaten by police while in custody, and 2) that both Petitioner's tape recorded statement and Detective Patterson's testimony during trial demonstrated that the interrogation of Petitioner was "very calm, very quiet, very low key, just like a conversation basically."  The record supports these factual findings, and Petitioner fails to overcome the presumption of correctness by clear and convincing evidence.

Petitioner does not demonstrate or even allege that he informed trial counsel that he confessed because he was beaten while in custody.  And during trial, Petitioner testified that he confessed because the detectives interviewing him acted aggressively toward him, and one detective threw a chair in the room and put his hands in Petitioner's face (Resp. Ex. 1, Vol. V at transcript pp. 495, 511).[9]  Petitioner did not, however, testify that he was beaten while in custody (Id. at transcript pp. 475-512).  Additionally, the tape recording of Petitioner's statement itself gave no indication that Petitioner was beaten or otherwise mistreated while in custody (Id. at transcript pp. 430-46).

Counsel has a duty "to make reasonable investigations" or "to make a reasonable decision that makes particular investigations unnecessary." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 691).  As the Supreme court stated in *Strickland*:

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant

---

[9]Detective Patterson testified that neither he nor Detective Licata threw a chair or put their hands in Petitioner's face (Id. at transcript pp. 513-14), and that "the tone of the interview" was "[v]ery calm, very quiet, very low key, just like a conversation basically."  (Id. at transcript p. 421).

and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information.

*Strickland*, 466 U.S. at 691.

Petitioner has failed to demonstrate that he provided information that would have given counsel reason to investigate whether Petitioner was beaten or mistreated while in custody. Likewise, the tape recording of Petitioner's interview with Detectives Patterson and Licata would give counsel no reason to investigate whether Petitioner was beaten or mistreated. Therefore, counsel was not deficient 1) in failing to investigate whether Petitioner's confession was the product of physical abuse or mistreatment, and 2) in failing to file a motion to suppress on that basis.

The state post-conviction court's denial of this claim was neither contrary to *Strickland* nor based on an unreasonable determination of the facts. Accordingly, Ground Two, Issue 6 does not warrant federal habeas relief.

G. Issue 7

Petitioner appears to contend that counsel was ineffective in failing to investigate Petitioner's background and present mitigation evidence at sentencing. In state court, Petitioner raised this claim in Issue 7 of his Rule 3.850 motion (Resp. Ex. 6b at pp. ). In denying the claim, the state post-conviction court stated:

> Under Ground Seven, the Defendant alleges that his trial counsel was ineffective for "fail[ing] to independently investigate [the Defendant's] personal background to discover and to exploit available evidence for mitigation." The Defendant further alleges that his trial counsel "did nothing to humanize him before the Court" and "allowed the Court to believe that [the Defendant] had no redeeming qualities despite availability and abundance of evidence to the contrary."
>
> This claim is without merit. The Defendant was charged with and convicted of a capital sexual battery under Florida Statute Section

29

794.011(2)(a). Consequently, a life sentence was the only permissible sentence for his crime. The Defendant's trial counsel acknowledged this was a mandatory sentence prior to its imposition. Because a life sentence was mandatory for this crime, the Defendant's trial counsel's failure to present mitigating evidence prior to sentencing could not have prejudiced him, and this claim is denied.

(Resp. Ex. 14 at p. 12) (footnotes omitted).

The state post-conviction court's determination that Petitioner failed to demonstrate prejudice was not objectively unreasonable, and was not based on an unreasonable determination of the facts. Petitioner was convicted of capital sexual battery in violation of Section 794.011(2)(a), Fla. Stat. (Resp. Ex. 1, Vol. I at record pp. 7-8, 46). In Florida, "[a] conviction for capital sexual battery carries a mandatory sentence of life imprisonment." *Peters v. State*, 861 So. 2d 1236, 1237 n.1 (Fla. 2d DCA. 2003) (citing §§ 794.011(2)(a), 775.082(1), Fla. Stat. (1999)). Therefore, in Petitioner's case there was no question of mitigating factors; once Petitioner was found guilty of capital sexual battery life imprisonment was mandatory. *See Buford v. State*, 403 So. 2d 943, 954 (Fla. 1981) (life sentence for crime of sexual battery upon a child under eleven years of age "is an automatic sentence, and the Court has no discretion."). Accordingly, Petitioner has failed to show deficient performance by counsel in failing to investigate and present mitigation evidence and prejudice.

The state post-conviction court's denial of this claim was neither contrary to *Strickland* nor based on an unreasonable determination of the facts. Accordingly, Ground Two, Issue 7 does not warrant federal habeas relief.

H. Issue 8

Petitioner contends that trial counsel was ineffective in failing to preserve issues for appeal. Initially, this claim is too vague and conclusory to support a claim of ineffective assistance of

counsel because Petitioner does not identify what he contends his counsel failed to preserve for appeal. Petitioner states that "[i]n support of this claim, the Petitioner specifically incorporates all of the foregoing discussion of errors stated above[,]" and "counsel was ineffective and cost him actual prejudice for failing to timely preserve each and every one of the errors alleged in the previous stated grounds for further appellate review." (Dkt. 1 at p. 9). With the exception of Ground One of the petition, the "previous stated grounds" assert ineffective assistance of trial counsel claims, which in Florida generally cannot be raised on direct appeal. *See Bruno v. State*, 807 So. 2d 55, 63 (Fla. 2001) ("a claim of ineffectiveness generally can be raised in a rule 3.850 motion but not on direct appeal."). And there is no indication in the record that the claim asserted in Ground One of the petition, which was raised in Petitioner's Initial Brief on direct appeal (Resp. Ex. 2), was procedurally defaulted in state court because it was not preserved for appeal.

Moreover, in denying Petitioner's claim that trial counsel was ineffective in failing to preserve issues for appeal, the state post-conviction court stated "[h]aving found no error in any of the previous seven grounds. . .the Court further finds that defense counsel could not have been ineffective for failing to preserve such non-meritorious claims." (Resp. Ex. 14 at p. 13). Because Petitioner has failed to show that reversible error occurred during his criminal proceedings, he cannot show counsel rendered deficient performance in failing to preserve issues for appeal. *See United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (no ineffective assistance of counsel for failing to preserve or argue meritless issue).

The state post-conviction court's denial of this claim was neither contrary to *Strickland* nor based on an unreasonable determination of the facts. Accordingly, Ground Two, Issue 8 does not warrant federal habeas relief.

I. Issue 9

Petitioner contends that the cumulative effect of trial counsel's errors rendered his trial fundamentally unfair.  In denying this claim, the state post-conviction court stated "[h]aving found no individual error in *any* of the Defendant's other grounds, either preceding or following, this Court finds no merit in the Defendant's claim of cumulative error."  (Resp. Ex. 14 at p. 13) (emphasis in original).

Petitioner's claim of cumulative error necessarily fails, since none of his claims of ineffective assistance of counsel have merit.  *Morris v. Secretary, Dept. of Corrections*, 677 F.3d 1117, 1132 (11th Cir. 2012) (where none of individual claims of error or prejudice have merit, "we have nothing to accumulate.").[10]  Consequently, Petitioner has failed to demonstrate that the state post-conviction court's denial of this claim was contrary to clearly established Supreme Court law, or based on an unreasonable determination of the facts.  Accordingly, Ground Two, Issue 9 does not warrant federal habeas relief.

J. Issue 10

In Ground Two, Issue 10, Petitioner asserts:

The Petitioner maintains that his trial counsel was prejudicially ineffective for abandoning him immediately following sentencing.  Further, Petitioner submits that counsel is required to inform him of the consequences and the right to appeal.  Therefore, Counsel should have taken whatever steps are necessary to protect the Petitioner's rights to appeal.  Instead, Petitioner contends that he was abandoned by

---

[10]The Court is not aware of any Supreme Court authority recognizing ineffective assistance of counsel "cumulative error" as a separate ground for federal habeas relief.  *See Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002) ("The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief."), *amended on other grounds*, 307 F.3d 459 (6th Cir. 2002), *cert. denied*, 538 U.S. 947 (2003).  *See also Hill v. Sec'y, Fla. Dep't of Corr.*, 578 Fed. Appx. 805, 810 (11th Cir. 2014) ("we need not decide the [cumulative error] issue here because, even assuming a claim of cumulative error is cognizable in federal habeas proceedings, Hill would not be able to satisfy that standard.").

his attorney despite multiple attempts to contact him to discuss issues for appeal.

(Dkt. 1 at p. 10).

In state court, Petitioner raised a similar claim in Issue 10 of his Rule 3.850 motion (Resp. Ex. 6b at pp. 34-35). There, Petitioner appeared to assert that after sentencing, trial counsel was ineffective in 1) abandoning Petitioner after sentencing, and 2) failing to consult with Petitioner regarding the issues to be raised on appeal (Id.). In denying Petitioner's claim that trial counsel abandoned Petitioner after sentencing, the state post-conviction court stated:

> Under Ground Ten of his Motion, the Defendant alleges that his trial counsel was ineffective for abandoning him "immediately following sentencing." The Defendant also alleges that "counsel is required to inform [him] of the consequences and the right to appeal" and "counsel should give his/her professional judgment on the merits of both potential grounds and the results of the appeal." After further alleging that counsel should "take whatever steps are necessary to protect the Defendant's rights of appeal," the Defendant complains that he "was totally abandoned by his attorney" despite attempts to contact him "to discuss issues for appeal."
>
> The Defendant's claims under this ground are not well taken, especially in light of the fact that the Defendant's trial counsel, Peter Belmont, did not abandon him immediately following sentencing, but rather filed both a timely Notice of Appeal and a Statement of Judicial Acts to be Reviewed on December 13, 2006. By January 24, 2007, the Public Defender for the Tenth Judicial Circuit was appointed to handle the Defendant's direct appea1. Thus, the Defendant's trial counsel timely filed a notice of appeal and, contrary to the Defendant's assertions, took the steps "necessary to protect the Defendant's rights of appeal." The Defendant's allegations under this ground are conclusively refuted by the record and are, therefore, denied.

(Resp. Ex. 14 at pp. 13-14) (footnotes omitted).[11]

The state post-conviction court's determination that trial counsel did not abandon Petitioner after sentencing and "took the steps 'necessary to protect the Defendant's rights of appeal'" was not

---

[11]The state post-conviction court did not adjudicate Petitioner's claim that counsel was ineffective in failing to consult with Petitioner regarding the issues to be raised on appeal.

objectively unreasonable, and was not based on an unreasonable determination of the facts. When an attorney is asked by the client to file a notice of appeal but disregards that request, the client is denied the effective assistance of counsel. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) ("We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."). When a client fails to make a specific request that an attorney file an appeal, the inquiry is whether the attorney consulted sufficiently with the client about a potential appeal and made a reasonable effort to determine the client's wishes. *Gomez-Diaz v. United States*, 433 F.3d 788, 791-92 (11th Cir. 2005). If the attorney consulted with the client, the attorney's performance is professionally unreasonable only if he fails to follow the client's instructions. *Roe v. Flores-Ortega*, 528 U.S. at 478. Here, the principles in *Flores-Ortega* are inapplicable because it is apparent from the record that after the Judgment was entered on November 29, 2006, Petitioner's trial counsel filed a timely notice of appeal on December 13, 2006, preserving Petitioner's right to appeal (Resp. Ex. 1, Vol. I at record p. 59). Therefore, the state post-conviction court correctly found that trial counsel did not render ineffective assistance because he did not abandon Petitioner, and preserved Petitioner's right to appeal.

To the extent Petitioner's claim may be liberally construed as asserting that counsel was ineffective in failing to consult with Petitioner regarding the issues for appeal before filing the Initial Brief, the claim does not warrant federal habeas relief. "Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under *Strickland*." *Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir. 2009) (per curiam) (citing *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991)). Appellate counsel's performance is prejudicial if "the neglected claim would have a reasonable probability of success on appeal[.]" *Heath*, 941 F.2d at 1132.

First, to the extent Petitioner is alleging that trial counsel, Peter Belmont, rendered ineffective assistance on appeal, the record shows that Attorney Belmont did not represent Petitioner on appeal. Rather, Attorney Daniel Castillo represented Petitioner on appeal (Resp. Ex. 2).   Therefore, Petitioner cannot show that he was prejudiced by Attorney Belmont's failure to discuss the issues for appeal with Petitioner because Petitioner could have discussed the issues with Attorney Castillo. Second, Petitioner does not even identify the arguments he would have liked appellate counsel to pursue on appeal, let alone demonstrate a reasonable probability that the arguments would have been successful.   Consequently, Petitioner has failed to demonstrate that he was prejudiced by counsels' alleged failure to consult with him regarding the issues to be raised on appeal.

Accordingly, Ground Two, Issue 10 does not warrant federal habeas relief.

K. Issue 11

Petitioner, who is black, contends that he was denied equal protection because 1) he was tried before an all-white jury; 2) the prosecutor exercised a peremptory challenge against the only black member of the jury venire on the basis of race; and 3) the racial composition of the jury venire did not represent a fair cross-section of the community.   In state court, Petitioner did not raise this claim on direct appeal (see Resp. Ex. 2).   Rather, he raised the claim for the first time in his Motion for Leave to Amend Motion for Post-Conviction Relief (Resp. Ex. 7).   The state post-conviction court rejected this claim on a procedural basis, stating:

> In Ground Eleven, the Defendant alleges that his right to equal protection was violated when members of his race were "purposely excluded" and he was put on trial before an "all white jury." In support of this claim, the Defendant alleges that even though his defense counsel pointed out that there was only one African-American in the jury venire, the Court granted the State's challenge and struck "the only black juror" in the venire. The Defendant contends that this violated his "right under the equal protection clause . . . to be tried by a jury of his peers."

35

The Defendant further alleges that "the venire in general was in total violation for it was not drawn from a cross section of his community." Thus, the Defendant's claims under this ground appear to allege both a racially discriminatory composition of the jury venire and a racially discriminatory use of peremptory challenges.

Both of these claims, however, are issues that should have been raised first at trial or on direct appeal in order to preserve the issue(s) for the purpose of a rule 3.850 motion.  As such, the Defendant's claims under this ground "may properly be denied without an evidentiary hearing because [they] . . . could have been raised on direct appeal and, consequently, cannot be relitigated in a postconviction relief proceeding."  Furthermore, with regard to the Defendant's claim that the State exercised racially discriminatory use of its peremptory challenges, that claim is also refuted by the record. Indeed, the trial court previously determined that the State had established a race-neutral reason for its peremptory challenge of the only African-American on the panel. Thus, the Defendant's claims under this ground are denied.

(Resp. Ex. 14 at pp. 14-15) (footnotes omitted).

The failure of a federal habeas petitioner to adhere to state procedural rules governing the proper presentation of a claim generally bars federal review of that claim in a subsequent federal habeas corpus proceeding.  *See Coleman v. Thompson*, 501 U.S. 722 (1991); *Wainwright v. Sykes*, 433 U.S. 72, 97 (1977); *Sims v. Singletary*, 155 F.3d at 1311.  "However, a state court's rejection of a federal constitutional claim on procedural grounds will only preclude federal review if the state procedural ruling rests upon [an] 'independent and adequate' state ground." *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001).  A state court's procedural ruling constitutes an independent and adequate state rule of decision if (1) the last state court rendering a judgment in the case clearly and expressly states that it is relying on a state procedural rule to resolve the federal claim without reaching the merits of the claim, (2) the state court's decision rests solidly on state law grounds and is not intertwined  with an interpretation of federal law, and (3) the state procedural rule is not applied in an "arbitrary or unprecedented fashion," or in a "manifestly unfair manner." *Id*. The state

post-conviction court expressly relied upon an independent and adequate state procedural bar to reject Petitioner's claims. The state appellate court affirmed the application of the procedural bar. Consequently, Petitioner's claims are procedurally defaulted. *See Harris v. Reed*, 489 U.S. 255, 262 (1989). *See also Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990) (finding that the state appellate court's per curiam affirmance of the lower court's ruling explicitly based on procedural default is a clear and express statement of its reliance on an independent and adequate state law ground barring federal review).

Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982). In other words, he must show at least a reasonable probability of a different outcome. *Henderson v. Haley*, 353 F.3d 880, 892 (11th Cir. 2003); *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

A petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96. A fundamental

miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson*, 353 F.3d at 892. This exception requires a petitioner's "actual" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup*, 513 U.S. at 327.

Petitioner fails to demonstrate cause and prejudice excusing his default. *Carpenter*, 529 U.S. at 451; *Carrier*, 477 U.S. at 495-96. He neither alleges nor shows that the fundamental miscarriage of justice exception applies. *Henderson*, 353 F.3d at 892. Because Petitioner fails to proffer specific facts showing an exception to procedural default, Ground Two, Issue 11 is procedurally barred from federal review.

Moreover, even if Ground Two, Issue 11 was not procedurally barred, it would fail on the merits. First, Petitioner's claim that his equal protection rights were violated because he is black and was tried and convicted before an all-white jury does not warrant relief. The Sixth Amendment guarantees a criminal defendant the right to a jury selected from a group representing a fair cross-section of the community. *Duren v. Missouri*, 439 U.S. 357, 364 (1979). However, "[t]he Constitution does not guarantee a defendant a proportionate number of his racial group on the jury panel or the jury which tries him; it merely prohibits deliberate exclusion of an identifiable racial group from the juror selection process.'" *United States v. Jones*, 687 F.2d 1265, 1269 (8th Cir. 1982) (citation omitted). Therefore, Petitioner's equal protection rights were not violated if an all-white jury heard his case. *See Batson v. Kentucky*, 476 U.S. 79, 85 (1986) (a criminal defendant does not have the right to a "petit jury composed in whole or in part of persons of his own race.") (citation omitted); *Taylor v. Louisiana*, 419 U.S. 522, 538 (1975) (While "petit juries must be drawn from

38

a source fairly representative of the community. . .[there is] no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition,. . .but the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof.") (internal citations omitted).

Second, Petitioner's challenge to the composition of the jury venire likewise does not warrant relief.  Petitioner's Sixth Amendment right is limited to "'the presence of a fair cross-section of the community on venire panels, or lists from which grand and petit juries are drawn.'" *Usher v. Mortin*, 165 Fed.Appx. 789, 792 (11th Cir. 2006) (quoting *United States v. Henderson*, 409 F.3d 1293, 1305 (11th Cir. 2005)). To establish a prima facie violation of this right, Petitioner must prove (1) that black persons are a "distinctive" group in the community, (2) that the representation of black persons in venires is not fair and reasonable in relation to the number of such persons in the community, and (3) that this under-representation is due to systematic exclusion of black persons in the jury selection process. *Duren v. Missouri*, 439 U.S. at 364; *United States v. Henderson*, 409 F.3d 1293, 1305 (11th Cir. 2005).

Petitioner has failed to offer any evidence showing 1) that the representation of black persons in venires is not fair and reasonable in relation to the number of such persons in the community, and 2) systematic exclusion of black persons from jury selection.  Consequently, he cannot establish a violation of the Sixth Amendment with respect to the composition of the jury venire.

Third and finally, this Court cannot say that the state post-conviction court's denial of Petitioner's claim that his equal protection rights were violated when the prosecutor exercised a

peremptory challenge against the only black member of the jury venire on the basis of race was

contrary to, or an unreasonable application of clearly established federal law, specifically the

Supreme Court's holding in *Batson*, or based on an unreasonable determination of the facts. "In

*Batson*, the Supreme Court held that a prosecutor's use of peremptory strikes in even a single case

to remove blacks from the jury on account of their race violates the Equal Protection Clause."

*United States v. Stewart*, 65 F.3d 918, 923 (11th Cir. 1995) (citing *Batson*, 476 U.S. 79). *Batson*

established the test to be used in determining whether either party engaged in race-based exclusions

of potential jurors through peremptory challenges. The test involves a three-step inquiry:

> First, the defendant must make out a prima facie case "by showing that the totality
> of the relevant facts gives rise to an inference of discriminatory purpose." 476 U.S.,
> at 93-94, 106 S. Court. 1712 (citing *Washington v. Davis*, 426 U.S. 229, 239-242, 96
> S. Ct. 2040, 48 L. Ed. 2d 597 (1976)) (footnote omitted). Second, once the defendant
> has made out a prima facie case, the "burden shifts to the State to explain adequately
> the racial exclusion" by offering permissible race-neutral justifications for the strikes.
> 476 U.S., at 94, 106 S. Court. 1712; *see also Alexander v. Louisiana*, 405 U.S. 625,
> 632, 92 S. Ct. 1221, 31 L. Ed. 2d 536 (1972). Third, "[i]f a race-neutral explanation
> is tendered, the trial court must then decide ... whether the opponent of the strike has
> proved purposeful racial discrimination." *Purkett v. Elem*, 514 U.S. 765, 767, 115
> S. Ct. 1769, 131 L. Ed. 2d 834 (1995) (per curiam).

*Johnson v. California*, 545 U.S. 162, 168 (2005).

Having reviewed the record, the Court concludes that Petitioner failed at trial to make out

a prima facie case of purposeful discrimination. When the State exercised a peremptory challenge

against Mr. Barton, the only black person on the jury venire (see Resp. Ex. 1, Vol. II at transcript pp.

125-26), defense counsel objected and stated "I mean, just to try and keep things short and complete,

yes, we would object. And I think the Court has said they [sic] have found a race-neutral reason."

(Id. at transcript p. 128). Defense counsel, however, did not present the trial court with any evidence

or argument in support of a *Batson* violation. Therefore, the only arguable evidence of a *Batson*

violation defense counsel presented at trial was that the State used a peremptory challenge against the only black person on the jury venire.  The fact that the State used a peremptory challenge against the only black person on the jury venire, standing alone, does not establish a prima facie showing of racial motivation.  *See United States v. Allison*, 908 F.2d 1531, 1538 (11th Cir. 1990) ("it is not true that all peremptory strikes of black venirepersons are for racial reasons.  In making out a prima facie case, the defendant must point to more than the bare fact of the removal of certain venirepersons and the absence of an obvious valid reason for the removal. The defendant must identify facts and circumstances that support the inference of discrimination, such as a pattern of discriminatory strikes, the prosecutor's statements during voir dire suggesting discriminatory purpose, or the fact that white persons were chosen for the petit jury who seemed to have the same qualities as stricken black venirepersons.") (internal quotation marks and citations omitted).

Additionally, even if, for sake of argument, defense counsel had established a prima facie case of discrimination after the State challenged Mr. Barton, defense counsel failed to rebut the State's race-neutral explanation.  During voire dire, both Mr. Barton and prospective juror Mr. Pasquantonio expressed that they would have difficulty disregarding a confession even if they believed it was not freely and voluntarily given (Resp. Ex. 1, Vol. II at transcript pp. 102-03, 110-11).  The State therefore challenged for cause both Mr. Barton and Mr. Pasquantonio on the ground that they could not follow the law (Id. at transcript pp. 124-26).  Although the trial court denied the challenges for cause, the trial court determined that the "State has established a race-neutral reason for a peremptory challenge [against Mr. Barton], particularly since the State is bringing it up against every single juror that's said it." (Id. at transcript p. 126).  Therefore, by ruling that the State had provided a "race-neutral reason" for excluding Mr. Barton, the trial court implicitly

41

found the explanation credible.

This Court must presume that finding to be correct. See 28 U.S.C. § 2254(e) (1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). The trial judge was in the best position to determine the genuineness of the State's reason for striking Mr. Barton. Petitioner has not demonstrated by clear and convincing evidence that it was unreasonable for the state court to accept the State's race-neutral reason. Consequently, the state post-conviction court's denial of Petitioner's claim that the State used a peremptory challenge to remove Mr. Barton from the jury on account of his race was not contrary to *Batson*, and was not based on an unreasonable determination of the facts in light of the evidence presented in the court.

Accordingly, Ground Two, Issue 11 does not warrant federal habeas relief.

Accordingly, it is **ORDERED** that:

1. Petitioner's petition for writ of habeas corpus (Dkt. 1) is **DENIED** because Petitioner's claims are time-barred and without merit.

2. The **Clerk** shall enter judgment against Petitioner, terminate any pending motions, and close this case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability (COA). A petitioner does not have absolute entitlement to appeal a district court's denial of his

habeas petition. 28 U.S.C. § 2253(c)(1). A district court must first issue a COA. Id. Petitioner is only entitled to a COA if he demonstrates that reasonable jurists would find debatable whether the Court's procedural ruling was correct and whether the § 2254 petition stated "a valid claim of the denial of a constitutional right." Id.; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To make a substantial showing of the denial of a constitutional right, Petitioner "'must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong,'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack*, 529 U.S. at 484), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).

Although jurists of reason could find it debatable that the dismissal of the petition as time-barred was correct, Petitioner is not entitled to a COA because he cannot demonstrate that reasonable jurists would debate whether the Court's other procedural rulings were correct, or whether the petition stated a substantial denial of a constitutional right. *See Spencer v. United States*, 773 F.3d 1132, 1138 (11th Cir. 2014) (even when a prisoner seeks to appeal a procedural error, "a certificate of appealability. . . must specify what constitutional issue jurists of reason would find debatable.") (citing *Slack*, 529 U.S. at 484). And because Petitioner is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida on ___July 9th___, 2015.

JAMES D. WHITTEMORE
United States District Judge

SA:sfc
Copy to: *Pro se* Petitioner
   Counsel of Record

43